IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | 2:07cr37 |
| v. ) | **Electronic Filing** |
| ) | |
| **GREGORY RYAN DENNIS, JR.** ) | |

## MEMORANDUM ORDER

AND NOW, this 18th day of February, 2020, upon due consideration of defendant's Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act and the parties' submissions in conjunction therewith, IT IS ORDERED that [55] the motion be, and the same hereby is, granted in the form of a re-imposed sentence of 180 months of incarceration and 8 years of supervised release. An amended judgment order will follow.

The parties do not dispute defendant's eligibility to receive discretionary relief here. What they disagree about is the scope of relief that should be awarded in the exercise of this court's discretion under the Act.

Defendant seeks a sentence of 147 months which in effect is one of time served. He highlights the change in sentencing norms that has occurred since his original sentencing, the lack of adequate familial support during his youth, his lack of maturity at the time he committed one of the offenses qualifying him as a career offender, his current age and his post-sentencing rehabilitative efforts.

The government contends that we should reduce defendant's term of supervised release from 10 to 8 years but deny any relief as to his sentence of incarceration. It maintains that the original term of incarceration should remain unchanged because defendant's designation as a career offender was not affected by the First Step Act and concomitantly his guidelines sentencing range remains unchanged. It further reasons that at sentencing the court varied

downward by 22 months to a sentence of 240 months, which continues to be an appropriate sentence today given defendant's serious offense conduct, prior criminal history and the limited nature of the court's current scope of review.

The standards by which we review First Step Act motions are set forth in United States v. Jaison Ceatrix Thompson, 1:05cr42, 2019 WL 4040403 (W.D. Pa. Aug. 27, 2019), and United States v. Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019), and those standards are incorporated herein. Those standards and the record as developed in conjunction with the instant motion sufficiently support the determination that the court should exercise its discretion and award defendant the reduced sentence set forth above.

We previously have rejected the government's contention that a defendant should be denied relief merely because he or she would be subject to the same career offender guidelines sentencing range if the case were brought today. See United States v. Frederick, 2:07cr387 (W.D. Pa. Feb. 4, 2020), Doc. No. 452 at p. 5. We did so because it is clear that a defendant's eligibility for relief is determined solely by qualifying under the First Step Act's definition of a covered offense and is not conditioned on a corresponding decrease in the applicable guidelines sentencing range. See Thompson, 2019 WL 4040403 *11 n.6 (citing United States v. Garrett, 2019 WL 2603531, *3 (S.D. Ind. June 25, 2019) (rejecting the government's contention that relief should be denied where application of the career offender guidelines continued to produce the same sentencing range of 360 months to life and opining that "[t]he fact that Mr. Garrett's guideline range remains unchanged does not foreclose a reduction of his sentence, at least not where he was sentenced to the mandatory minimum and the mandatory minimum sentence was thereafter reduced by section 2 of the Fair Sentencing Act.") (citing United States v. Bean, No. 1:09-cr-143, 2019 WL 2537435, at *5–6 (W.D. Mich. June 20, 2019)); accord United States v. Biggs, 2019 WL 2120226, *3-4, 7 (N.D. Ill. May 15, 2019) (same); United States v. Hadley, 389

F. Supp.3d 1043, 1048 (M.D. Fla. 2019) (granting First Step Act motion notwithstanding unchanged career offender guidelines sentencing range of 360 months to life); United State v. Payton, 2019 WL 2775530, *4-5 (E.D. Mich. July 2, 2019) (granting First Step Act relief where career offender guidelines sentencing range remained unchanged); United States v. Clemon, 2019 WL 6894130, *1 (D. S.C. Dec. 18, 2019) (granting relief where pre- and post-First Step Act guidelines sentencing range remained unchanged); cf. United States v. Brandon, 2019 WL 4139400, *3-4 (E.D. Mich. Aug. 30, 2019) (granting First Step Act relief notwithstanding presidential commutation of sentence that reduced it below the guidelines sentencing range applicable at First Step Act re-sentencing) (collecting cases). Thus, even assuming we are unable to re-examine a defendant's career offender designation and he or she remains subject to the same career offender guidelines sentencing range, these sentencing factors are not legal barriers to awarding First Step Act relief.

We likewise have rejected the government's argument that we should follow the sentencing rationale utilized at a defendant's original sentencing hearing and simply arrive at the same sentence. See United States v. Frederick, 2:07cr387 (W.D. Pa. Feb. , 2020), Doc. No. 452 at p. 5; United States v. Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019). That rationale was advanced under a set of existing precepts that were displaced by the First Step Act and replaced by the standards embodied therein. The standards now governing the task at hand were intended to give the defendant a "do-over of sorts" and we fail to see any sound justification for shirking the responsibility of performing that task under the guise of prior judicial musings rendered under meaningfully different circumstances.

Of course, our unwillingness to follow the government's lead does not mean that the salient aspects of defendant's character and criminal history it has highlighted likewise should be discounted. To the contrary, those factors continue to inform the sound exercise of discretion in

3

formulating an appropriate sentence. But it is the discretion that has been afforded by the First Step Act that must be exercised in accordance with the prevailing standards of today notwithstanding the government's perception that yesterday's views were better.

We likewise have declined to limit our review of the information to be considered in conjunction with a section 404 First Step Act motion to 1) the information available at the time of the original sentencing and/or 2) only changes in the applicable guidelines. See Thompson, 2019 WL 4040403, *8-11 (declining to adopt the scope of review under 18 U.S.C. § 3582(c)(2) on the ground that "the First Step Act contains its own independent grant of discretionary authority to the district courts by permitting a 'court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.' This grant 'authorizes a reduction in sentence by its own terms' and does not depend on any complimentary authority in § 3582.") (quoting Dodd, 372 F. Supp.3d at 797 n.2 and Boulding, 379 F. Supp.3d at 653); Warren, 1:08cr46, Doc. No. 109 (W.D. Pa. Nov. 6, 2019) (declining to limit the scope of review to the record as it existed at the original sentencing hearing and/or to follow in lockstep with the original sentencing rationale). Instead, we have determined that "a court deciding whether to impose a reduced sentence under section 404 should evaluate all such information pursuant to the 'lodestone' of sentencing factors set forth in 18 U.S.C. § 3553(a), any changes to the applicable guideline range, post-sentencing conduct bearing on rehabilitation and so forth." Thompson, 2019 WL 4040403, *10 (collecting cases).

This approach "permits the court to engage in its traditional role of factfinding in relation to the imposition of a sentence within the prescribed limits." Id. "It also permits the consideration of the brute facts and information that traditionally have a bearing on the sound exercise of the court's sentencing discretion." Id.

4

We turn to that undertaking in this case. On January 30, 2007, a grand jury returned a 3 count indictment charging defendant with violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and (B). On October 5, 2007, defendant pled guilty to Count Two, charging him with possession with the intent to distribute 50 grams or more of cocaine base, in violation of 21 U. S. C. §§ 841(a)(1) and (b)(1)(A)(iii). The government filed an information pursuant to 21 U.S.C. § 851 establishing a prior predicate conviction, which doubled the mandatory minimum sentence on the offense of conviction from 10 to 20 years of incarceration and from 5 to at least 10 years of supervised release. His relevant conduct involved possession with the intent to distribute 60.5 grams of crack cocaine.

On December 21, 2007, defendant was sentenced to 240 months, the mandatory minimum sentence at the time, with 10 years of supervised release. The mandatory minimum sentence on the charged conduct in the offense of conviction upon the filing of a section 851 notice - as modified by the Fair Sentencing Act of 2010 – has been reduced to a term of 120 months of incarceration and 8 years of supervised release. Thus, defendant was sentenced for a covered offense as defined by the First Step Act.

Defendant's prior criminal history reflected three significant convictions and one pending charge. On January 30, 1991, defendant asked to use the telephone in the residence of an individual he knew. The victim let him in. Defendant drew a handgun and demanded money under threat of shooting the victim. The victim fled the scene. When she returned, she discovered that two coats were missing. Defendant pled guilty to robbery, burglary and theft by unlawful taking. He received a sentence of 1 and ½ to 3 years and served about seven months for the offenses.

On January 29, 1998, defendant pled guilty to two separate violations of Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act: one stemming from defendant's delivery

5

of 4.7 grams of crack on January 14, 1997, and the other from defendant and another individual delivering 1.47 grams of crack cocaine on June 10, 1997. He received a sentence of 3 to 6 years for each of these offenses, which were made to run concurrently. He served just over 3 years for these offenses.[1]

Defendant was classified as a career offender. His career offender guidelines sentencing range was 262 to 327 months. Because defendant remains subject to a maximum term of life imprisonment under the revisions to 21 U.S.C. § 841 brought about by the Fair Sentencing Act, defendant's career offender guidelines sentencing range remains unchanged.

We reject the government's contention that we should follow the sentencing rationale utilized at defendant's original sentencing and re-impose the same term of incarceration. The court's original sentence was cabined by the statutorily mandated minimum sentence. Thus, with that floor now being lowered to 120 months by the retroactive application of the Fair Sentencing Act, the degree of relief to be awarded under the First Step Act remains.

We begin by taking note of the changes that have transpired over the past 12 years with regard to defendant's offense conduct and criminal history without consideration of the impact of the career offender provisions. While not directly relevant, the correlation between these two sentencing ranges does shed light on the ameliorative adjustments that have been made to the treatment of crack cocaine offenses under the United States Sentencing Guidelines.

In 2007, the offense level for 60.5 grams of crack cocaine was set at 30 pursuant to U.S.S.G. § 2D1.1(c)(5). Defendant received 3 points for timely acceptance of responsibility,

---

[1] Defendant also pled guilty on April 26, 1995, to the offense of possession of a controlled substance and served approximately 5 months before being released pursuant to a sentence of 10 to 20 days.
  Defendant had pending state charges at the time he was sentenced by this member of the court which appeared to involve another home-invasion type incident wherein defendant allegedly assaulted an individual who knew him by grabbing the victim around the throat and demanding money.

producing an adjusted base offense level of 27. He had 7 criminal history points, which established a criminal history category of IV. An adjusted base offense level of 27 and a criminal history category of IV produced a guidelines sentencing range of 100 to 125 months under the 2007 United States Sentencing Guidelines. See Chapter Five, 2007 United States Sentencing Guidelines Manual, https://www.ussc.gov/guidelines/archive/2007-federal-sentencing-guidelines-manual.

Today, distribution of 60.5 grams of crack cocaine produces a base offense level of 24 pursuant to U.S.S.G. § 2D1.1(8), with an adjusted base offense level of 21 after a 3 point reduction for timely acceptance of responsibility. An adjusted base offense level of 21 and a criminal history category of IV produce a guidelines sentencing range of 57 to 71 months. See Chapter Five, 2018 United States Sentencing Guidelines Manual, https://www.ussc.gov/guidelines/2018-guidelines-manual-annotated.

The treatment of defendant's offense conduct in his criminal history category without career offender treatment has been reduced by approximately 43 percent over the past 12 years. While defendant remains a career offender and this reduction in the severity of punishment does not have a direct impact on the controlling guidelines or the exercise of our discretion, it does provide some measure of comparison with regard to how defendant's offense conduct in itself would be treated today. And taking this adjustment into account is in keeping with the remedial purposes of the First Step Act and the "do-over of sorts" it has provided for career offenders. See United States v. Frederick, 2:07cr387 (W.D. Pa. Feb. , 2020), Doc. No. 452 at p. 9 ("A major purpose of the First Step Act was to permit the court to impose a revised sentence that reflects the congressional judgment that the current sentencing norms and standards more adequately reflect the seriousness of crack cocaine offenses.") (citing United States v. Mitchell, 2019 WL 2647571, *8 (D. D.C., June 27, 2019) (the fact that defendant would not qualify as a career

offender if sentenced today appropriately is considered in exercising the court's discretionary authority under the First Step Act) (quoting United States v. Biggs, 2019 WL 2120226, *4 (N.D. Ill., May 15, 2019) ("Because the Fair Sentencing Act and the First Step Act reflect Congress's judgment that shorter prison sentences adequately reflect the seriousness of crack cocaine offenses, reduction of Biggs's sentence aligns the statutory purposes of sentencing with the goal of the reform legislation."). Although defendant may not be entitled to a full resentencing at this juncture and we operate with the understanding that his prior designation as a career offender and career offender guidelines sentencing range remain unchanged, the ameliorative adjustment in punishment for his offense conduct without career offender treatment provides one factor to be considered in the exercise of our discretion.

At sentencing, defense counsel advocated for an adjustment based on a one-to-one ratio for the equivalent amount of powder cocaine, which was an argument made pursuant to the then-recent decision in Kimbrough v. United States, 552 U.S. 85, 101 (2007) (a district court may vary at sentencing based on a policy disagreement with the treatment of offense conduct in the guidelines). Under the 2007 guidelines, treatment of defendant's offense conduct would have produced an offense level of 16 and an adjusted base offense level of 13 with a 3 point adjustment for acceptance of responsibility. An adjusted base offense level of 13 and a criminal history category of IV would have resulted in a guidelines sentencing range of 24 to 30 months. See Chapter Five, 2007 United States Sentencing Guidelines Manual, https://www.ussc.gov/guidelines/archive/2007-federal-sentencing-guidelines-manual.

Moreover, the government points out that if defendant's offense conduct were treated on a one-to-one ratio with powder cocaine in 2007, his career offender designation would have produced a guidelines sentencing range of 188 to 235 months. See Government's Response in Opposition (Doc. No. 60) at 2; accord 2007 U.S.S.G. § 4B1.1(b)(B) & Sentencing Table (34-3 =

8

31 & 31 & VI = 188 to 235).  We take this potential treatment of defendant's offense conduct into account as well in exercising our discretion under the First Step Act.[2]

All of the variations under the Guidelines set forth above produce sentencing ranges that are below the mandatory minimum sentence this court was required to impose.  Collectively, they provide support for defendant's position that the court should exercise its discretion and imposed a reduced sentence pursuant to the First Step Act.

Other aspects of the record also support the exercise of discretion on defendant's behalf.  Defendant suffered from familial and institutional failures during his formative years.  His father was incarcerated during his childhood and his mother formed a long-term relationship with a known drug-dealer, who did not want defendant and his brother around.  Defendant was sent to live with his maternal grandparents, with his mother providing modest support thereafter.  The common scenarios of poor performance in and failing to complete school and early teenage use of drugs and alcohol followed.  Serious drug and alcohol abuse were present by the time defendant was a young adult.  Defendant's inability to receive nurturing support in early childhood and his ensuing drug and alcohol abuse from his teenage years into early adulthood are factors that commonly support a variance and further support the exercise of our discretion here.

Defendant's age at the time he committed his prior predicate offenses also is a factor that properly is taken into account.  Defendant was only 18 years of age at the time he entered the house of an acquaintance, apparently in an effort to retrieve money that he claimed belonged to

---

[2] As defendant notes, the trend toward imposing sentences below the guidelines sentencing range for career offenders steadily increased between 2005 and 2014, with a corresponding increase in government support for such departures/variances.  See Defendant's Brief in Support (Doc. No. 55) at 10 & n.6 (citing U.S. Sentencing Commission, Report to Congress: Career Offender Sentencing Enhancements (August 2016).  Such trends underlie and are in line with the remedial purposes of the First Step Act.

9

him, and forcefully removed coats. And he was 24 years of age when he committed his two prior predicate offenses involving drug distribution. These offenses were committed with months of each other and defendant received concurrent punishment for these drug offenses.

Defendant committed his first predicate offense at a very young age. He was just 18 years of age at the time. His two other predicate drug offenses were committed within 6 months of each other when he was 24 years of age. In addition to his lack of nurturing familial support and substance abuse during his teens and early twenties, defendant's age at the time he committed his predicate offenses is a factor that typically provides a basis for some degree of leniency at sentencing and it is a factor that further supports the exercise of our discretion at this juncture.

Defendant also expressed responsibility for his criminal conduct and he timely assisted authorities relative to his own prosecution. He expressed a genuine desire for rehabilitation during the sentencing process and an intent to reform his life in order to become a better parent and be a better role model for his children.[3] All of these mitigating aspects of defendant's character were credited in formulating the variance at sentencing and they continue to be relevant and support the exercise of our discretion.

Several other aspects of the record also inform the exercise of our discretionary authority and support the imposition of a reduced sentence here. Defendant has sought to prepare himself for a successful reintegration into society by addressing the substance abuse issues that plagued him as a teenager and younger adult and he has undertaken several educational courses designed to assist him in successful reintegration. He completed the Addiction Studies program offered by St. Joseph's Addiction and Recovery Centers. See Doc. No. 59 at p.1. He completed 360

---

[3] In conjunction with the pending motion the court recently has reviewed defendant's allocution at the time of sentencing.

10

hours in alcohol and substance studies and now serves as a certified substance abuse counselor in prison. Id. at 3.

Defendant similarly has completed vocational and educational courses geared toward self-improvement and success after release. He has obtained his GED and completed numerous courses aimed at building the skills needed to lead a productive life. Id. These include developing job interview skills, business math, ethics, electronics technology, a writing workshop and financial money management. Id. This significant effort to improve himself and the chances of his success upon release further support the exercise of our discretion and the reduced sentence set forth above. And his institutional behavior has earned him at least 564 days of good time credit, which suggests he has been free from major disciplinary incidents over the past several years and has not been a management concern for the Bureau.

Finally, defendant was young at the time he committed the predicate offenses. He received two modest sentences of incarceration on those offenses. He was 33 years of age at the time he committed the instant offense and 35 when he was sentenced. He has served over 13 years. He is now 47 and has reached an age where the statistics on the recidivism show that his likelihood of re-offending has meaningfully declined.[4] His current age, significant period of incarceration, maturation and post-sentencing conduct while incarcerated bode well for his successful reintegration. Collectively, these factors further support the determination that a re-imposed sentence of 180 months is a sufficient term of incarceration.

Consideration of all of the above through the lens of the § 3553(a) factors convinces us that the proper exercise of discretion is a reduction to a term of 180 months of incarceration and

---

[4] See National Institute of Justice, Five Things About Deterrence (May 2016), at 2, available at https://www.ncjrs.gov/pdffiles1/nij/247350.pdf ("Even those individuals who commit crimes at the highest rates begin to change their criminal behavior as they age. The data show a steep decline at about age 35.").

8 years of supervised release.  A reduction of this degree strikes the proper balance in applying the § 3553(a) factors and imposes a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.  Accordingly, defendant's motion pursuant to Section 404 of the First Step Act has been granted and a Judgment Order of Conviction and Sentence imposing this new sentence will be issued.

s/David Stewart Cercone  
David Stewart Cercone  
Senior United States District Judge

cc:    Adam N. Hallowell, AUSA  
       Samantha Stern, AFPD

       (*Via CM/ECF Electronic Mail*)